PEOPLE *v.* KING

1. Criminal Law—Evidence—Preliminary Examination Transcript—Appeal and Error.

Trial judge's reading of a preliminary examination transcript before its introduction into evidence does not prejudice a defendant, if the testimony given at the former hearing is repeated at defendant's nonjury criminal trial.

2. Indictment and Information—Witnesses—Indorsement.

Failure of prosecutor to indorse three witnesses on an information did not cause reversible error where the police did not have the name of one witness in their report and there was testimony that she ran from the scene when the assault in question started, and where there was no testimony that the other two witnesses actually saw the assault and the details of the disturbance given by the victims were substantially corroborated by defendant's own testimony so that the testimony of these missing witnesses was not essential.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 March 5, 1970, at Detroit. (Docket No. 6,185.) Decided March 27, 1970. Leave to appeal granted September 22, 1970. 384 Mich 757.

William Preston King was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals. Affirmed.

References for Points in Headnotes
[1] 53 Am Jur, Trial § 1125.
[2] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief of Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: Lesinski, C. J., and Quinn and V. J. Brennan, JJ.

Per Curiam. Following a nonjury trial defendant was convicted of assault with intent to do great bodily harm less than murder[1] and sentenced to 9-1/2 to 10 years in prison.

At the beginning of trial the trial judge gave the following answer to the prosecutor's request for the transcript of the preliminary examination testimony: "Yes as soon as I finish it." Although no claim of error was raised below, the defendant now argues that the trial judge's answer indicated he was reading the transcript and that such an act is reversible error. Assuming, *arguendo,* that it is error for a trier of fact to *sua sponte,* read the preliminary examination transcript before its introduction into evidence, and that the trial judge below, in fact, read the transcript, we fail to see how the defendant was prejudiced. A review of both the preliminary examination transcript and the trial transcript reveals that no testimony was given at the former hearing that was not repeated at the trial.[2]

---

[1] MCLA § 750.84 (Stat Ann 1962 Rev § 28.279).

[2] The prosecutor pointed out, in his brief and on oral argument, that at a hearing on the motion for new trial, the trial judge

The assault in this case occurred when defendant shot the complaining witness, Emmett Williams, during a barroom brawl. It appears that a fight between defendant and Williams' stepbrother led to the shooting of the stepbrother by defendant. After the shooting defendant and others continued to accost and beat the stepbrother in the rear of the bar. Complainant, who was in the front of the bar, ran to the area of the fight, grabbed defendant and threw him back in an attempt to protect his stepbrother. Defendant then shot Williams in the face and the shoulder. Defendant testified that he was just "looking out for [his] interest" when he shot Emmett Williams. Defendant did not testify that Williams did anything but pull him off and throw him to the ground.

Defendant's second claim of error concerns the plaintiff's alleged failure to indorse on the information[3] three *res gestae* witnesses. The sister of one of the missing witnesses testified that the witness, Caroline Wiley, had given her name and address to the investigating officers. However, the officer in charge of the case explained her absence in this manner:

"*Det. Day:* We don't have her name on our report, your Honor, from the original report.

"I called the bar prior—after this incident happened to inquire about other witnesses to speak to and nobody had—nobody knows anything about any other witnesses, other than the people that stepped forward and volunteered their names."

In addition, Caroline Wiley's sister testified that Miss Wiley ran from the bar as soon as the brawl

---

*denied* reading the preliminary examination transcript. The defendant admitted the accuracy of the prosecutor's statement on oral argument.
[3] MCLA § 767.40 (Stat Ann 1969 Cum Supp § 28.980).

began.   Under these facts there is no indication
that Caroline Wiley could have added any new evi-
dence concerning the assault on the complaining
witness.   There was no reversible error.   *People* v.
*Kayne* (1934), 268 Mich 186, 194.

The two other missing witnesses were the bar-
maid or barmaids[4] apparently on duty the night of
this fight.   Although there was *no* testimony that the
barmaids actually saw the brawl[5] involving the com-
plaining witness, the defendant argues that their
testimony was essential.   We disagree.   The details
of the disturbance, testified to by the two victims,
the complaining witness and his stepbrother, were
substantially corroborated by the defendant's own
testimony.   The fact of the shooting was admitted
by the defendant.   There is no evidence that Wil-
liams posed any threat to defendant.   Further, ready
means of escape were available to defendant after
he was thrown back.

Affirmed.

---

[4] One of defendant's witnesses testified that there was *a* barmaid
present.   Defense counsel, during argument, indicated that *his* in-
vestigation revealed two barmaids on duty.   Although the bar owner,
who was on duty himself, testified during the trial, no further testi-
mony as to other employees was elicited.

[5] Although one of defendant's witnesses testified that she "guessed"
that one of the barmaids called police to report a fight, the bar
owner testified that, in fact, he called the police.